[S. F. No. 1979.  Department Two.—March 17, 1900.]

N. R. PRINCE et al., Appellants, v. CHARLES LAMB et al.,
Respondents.

CONTRACT FOR INTEREST IN MINES—EQUITABLE ACTION—ACCOUNTING—
SPECIFIC PERFORMANCE—TEST OF SUFFICIENCY OF COMPLAINT.—A
complaint claiming an interest in mines located by the defend-
ant in his own name in the Northwest Territory, Canada, under
an alleged contract for a share therein, and seeking an account-
ing of the proceeds of mining; and of sales of claims made by
the defendant, and that the defendant be required to convey a
half interest on all claims now owned by him in said territory,
is in its nature an equitable action for an accounting and to
compel the specific performance of a contract; and the suffi-
ciency of the complaint must be tested and measured by the
rules which prevail in courts of equity.

ID.—ABSENCE OF CLAIM FOR DAMAGES—NECESSITY FOR ACCOUNTING.—If
the complaint does not state or claim any damages, it does not
warrant any legal relief in the way of damages for breach of
the contract; and where no recovery of money can be had in
the action without the equitable remedy of an accounting, the
action is purely equitable in its nature.

ID.—PARTNERSHIP NOT SHOWN—EXECUTORY CONTRACT.—A complaint
stating an executory contract for a moiety of property in mines
to be located by the defendant, but which does not state an
agreement for a partnership, or for the division of profits of
working the mines, and does not show that plaintiffs own any
interest in any partnership property or business, or that they
have been associated with the defendant in mining, or carrying
on any business, and which refers to the mines as being owned
by the defendant, does not state a partnership contract, nor
show the existence of any partnership, general, mining, or
special.

ID.—GRUB-STAKE CONTRACT—CONTRIBUTION TO TRAVELING EXPENSES.—
It is essential to a right in mining property acquired under a
grub-stake contract that such property should be acquired by
means of the grub-stake furnished, and pursuant to the grub-
stake contract.  A complaint merely alleging that fifty dollars
was contributed by plaintiffs upon the departure of the defend-
ant for the Northwest Territory to enable him to go there, under
an agreement for a share in all mining locations to be made by
him, but which does not show that any part of the money was
to be used or was used in procuring any of the mining claims in
controversy, does not show a grub-stake contract.

ID.—SPECIFIC PERFORMANCE—ADEQUATE CONSIDERATION—JUST AND REA-
SONABLE CONTRACT—PLEADING.—A complaint for the specific per-

formance of a contract must state such facts as will show that
the contract is founded upon an adequate consideration, and
that it is just and reasonable as to the defendant.

ID.—INSUFFICIENT COMPLAINT—CONTRIBUTION OF FIFTY DOLLARS FOR HALF
INTEREST IN MINES — EXPENSIVE JOURNEY.—A complaint showing
merely a contribution of fifty dollars from the plaintiffs toward
a toilsome and expensive journey of the defendant to the North-
west Territory, in consideration for an agreement for a half
interest in all of the mines which should be located or acquired
at the expense of the defendant either in Alaska or in the
Northwest Territory, does not show an adequate consideration
in equity for the contract, nor a just and reasonable contract
which a court of equity will enforce, but affirmatively shows
the contrary, considering the contract as of the time when it
was made; and the complaint is insufficient to entitle the plain-
tiff to specific performance, or to any relief in equity.

ID.—SUSTAINING OF DEMURRER—REFUSAL OF AMENDMENT OF COMPLAINT—
NATURE OF FACTS—ABSENCE OF REQUEST OR EXCEPTION.—Where the
nature of the facts is such that it is reasonably certain that a
complaint in equity cannot be amended so as to state a cause
of action for equitable relief, and the record fails to show any
request for an amendment of the complaint, or any exception to
the ruling of the court, its refusal to allow an amendment of
the complaint upon the sustaining of a demurrer thereto cannot
be considered as erroneous.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

Brown & Newby, and Sawyer & Burnett, for Appellants.

The complaint shows a partnership for no fixed period, which
was terminated by the refusal of the defendant to carry it on.
(Civ. Code, secs. 2395, 2449, 2459, subd. 2; *Ross v. Cornell,*
45 Cal. 133; *Ligare v. Peacock,* 109 Ill. 94.)   The termination
of the partnership could not affect rights previously vested.
(*Lawrence v. Robinson,* 4 Colo. 567.)   All the essential condi-
tions of a partnership are shown.   (*Beauregard v. Case,* 91 U.
S. 134; *Harris v. Hillegass,* 54 Cal. 465; *Skillman v. Lachman,*
23 Cal. 204; 83 Am. Dec. 96.)   A grub-stake contract is a
qualified partnership.   (*Boucher v. Mulverhill,* 1 Mont. 306;
*Berry v. Woodburn,* 107 Cal. 504; *Moritz v. Lavelle,* 77 Cal. 10;
11 Am. St. Rep. 229; *Meylette v. Brennan,* 20 Colo. 242; *Hirbour
v. Reeding,* 3 Mont. 15.)   The partnership was launched when

Lamb started for the Klondike; and any mines acquired by him were partnership property, the title to which was held in trust for his copartners. (Parsons on Partnership, 4th ed., sec. 6, note "d"; *Lawrence v. Robinson, supra; Kerrick v. Stevens,* 55 Mich. 167; *Beauregard v. Case, supra.*) The parting with plaintiffs' money was a good consideration for the contract. (Civ. Code, secs. 1605, 1606; 1 Parsons on Contracts, *430, and note.) The plaintiffs are entitled to an accounting. (*Garr v. Redman,* 6 Cal. 574; *Quackenbush v. Sawyer,* 54 Cal. 441; *Petrie v. Torrent,* 88 Mich. 43, 58; *Mitchell v. O'Neale,* 4 Nev. 523; *Clifton v. Howard,* 58 Am. Rep. 106, and notes.) The court may enforce a distribution of property in kind, and order a conveyance of property though not situated in the state of California. (*Harper v. Lamping,* 33 Cal. 641; 2 Lindley on Partnership, 1017, and notes; *Griggs v. Clark,* 23 Cal. 429; *Bremner v. Leavitt,* 109 Cal. 133.) The contract must be considered as of the time when it was made, and not in the light of subsequent events. (*Rutland Marble Co. v. Ripley,* 10 Wall. 339; Sugden on Vendors, c. 5, sec. 3; *Lee v. Kirby,* 104 Mass. 420-28; *Revell v. Hussy,* 2 Ball & B. 280-87; *Paine v. Meloer,* 6 Ves. Jr. 349-52; *Mortimore v. Copper,* 2 Bro. Ch. 156.) The court should have allowed an amendment to make the complaint more certain. Plaintiff was entitled to recover at law, if not in equity. (*While v. Lyons,* 42 Cal. 279; *McPherson v. Weston,* 64 Cal. 279.)

Hall McAllister, and M. F. Michael, for Charles Lamb, Respondent.

The complaint states no cause of action for damages. (*Bohall v. Diller,* 41 Cal. 532, 535.) The contract is repugnant to equity and the court had discretion not to enforce specific performance. (*Radcliffe v. Warrington,* 12 Ves. 332; *Fish v. Lightner,* 44 Mo. 268, 272; *Fish v. Leser,* 69 Ill. 394, 395; *Quinn v. Roath,* 37 Conn. 16, 24; *McComas v. Earley,* 21 Gratt. 23, 29; *Cooper v. Pena,* 21 Cal. 403, 411; *Bruck v. Tucker,* 42 Cal. 346, 353; *Seymour v. Delancey,* 6 Johns. Ch. 222; *Carlisle v. Carlisle,* 78 Ala. 339.) The contract is too vague and uncertain in its terms to be enforced. (Civ. Code, sec. 3391, subd. 2; *Morrison v. Rossignol,* 5 Cal. 65, 66; *Phillips v. Thompson,* 1 Johns. Ch. 131; *Sturgis v. Galindo,* 59 Cal. 28, 31; 43 Am. Rep.

239; *Smith v. Taylor*, 82 Cal. 533, 541; *Carlisle v. Carlisle, supra; Port Jervis etc. R. R. Co. v. New York etc. Ry. Co.*, 10 N. Y. Supp. 582; 56 Hun, 647; *Texas etc. Ry. Co. v. Marshall*, 136 U. S. 393.) The agreement should not be enforced, because it is unfair, unreasonable, and unjust—a hard bargain. (*Bruck v. Tucker, supra; Agard v. Valencia*, 39 Cal. 302; *Pope Mfg. Co. v. Gormully*, 144 U. S. 224; *Bruce v. Tilson*, 25 N. Y. 202; *Perkins v. Wright*, 3 Har. & M. 324.) Courts of equity will not aid in securing a contingent or speculative advantage. (*Mississippi etc. R. R. Co. v. Cromwell,* 91 U. S. 643; *Randolph v. Quidneck Co.*, 135 U. S. 457; *Clarke v. Rochester etc. R. R. Co.*, 18 Barb. 350, 355; *Andrews v. Andrews*, 28 Ala. 432; *Smith v. Crandall*, 20 Md. 482; *Daniel v. Frazer*, 40 Miss. 507; *McWhorter v. McMahan*, 1 Clarke Ch. 406; *Crane v. Decamp*, 21 N. J. Eq. 414.) Specific performance cannot be enforced, because the consideration for the agreement is grossly inadequate. (Civ. Code. sec. 3391, subd. 1; *Ward v. Yorba*, 123 Cal. 447, 452; *Nicholson v. Tarpey*, 70 Cal. 608, 609; *Dunlap v. Kelsey*, 5 Cal. 181; *Bruck v. Tucker, supra; Seymour v. Delancey, supra; Sturgis v. Galindo, supra; Modissett v. Johnson*, 2 Blackf. 431; *Johnson v. Dodge*, 17 Ill. 438; *Mississippi etc. R. R. Co. v. Cromwell, supra; Randolph v. Quidneck Co., supra.*) The complaint shows no partnership—general, special, or mining partnership. (Parsons on Partnership, 4th ed., 42, 47; 1 Bates on Partnership, 35; *Smith v. Schultz*, 89 Cal. 526, 534; *Harris v. Hillegass*, 54 Cal. 463; Civ. Code, secs. 2511, 2512.) An executory contract to form a partnership cannot be specifically enforced in equity. (*Powell v. Maguire*, 43 Cal. 11; *Hyer v. Richmond Traction Co.*, 168 U. S. 471, 484, and cases cited.) The complaint shows no grub-stake contract. (*Meylette v. Brennan*, 20 Colo. 242; *Berry v. Woodburn*, 107 Cal. 512; *Miller v. Butterfield*, 79 Cal. 62; *Boucher v. Mulverhill*, 1 Mont. 306.) No question of the refusal of the court to allow an amendment to the complaint arises upon the record. (*Buckley v. Howe*, 86 Cal. 596; *Durrell v. Dooner*, 119 Cal. 411, 413.)

GRAY, C.—This is an appeal from a judgment following an order sustaining a demurrer to the complaint without leave to amend. The action is against the defendant Lamb. Smith

was made a defendant because he was out of the United States, and his consent to become a plaintiff could not be obtained.

The substance of the complaint, necessary to be stated, is as follows: That in the year 1896, in the city of Los Angeles, the plaintiffs and defendant Smith agreed to and did furnish said defendant Lamb with fifty dollars (ten dollars each) "as a grubstake to enable him to go to Alaska, or the Northwest Territory, Canada, to prospect for gold and other precious metals, and to locate and acquire mines and mining claims." That in consideration thereof Lamb agreed to go to said territory to prospect for gold and other precious metals, and that plaintiffs and said Smith should have an undivided one-half of any mines or claims located or acquired by said Lamb, together with a like one-half of all the minerals that Lamb should extract therefrom after the end of one year from the date of the contract, and after deducting therefrom the necessary expense of mining the same, and that defendant Lamb would account to and pay over to them the said one-half of said minerals. It was also alleged that it was agreed between the parties that if Lamb should be successful in locating or acquiring any mines or claims of value, or thought to be of value, he should notify the other parties at once by letter, and, as soon as possible thereafter, they should go to said territory and assist in working the same, furnishing one-half the labor and expense thereof, and said plaintiffs and said Smith were to be the owners of an undivided one-half of any mines or mining claims so located or acquired by Lamb, and were to have one-half of all the minerals thereby extracted. It is further alleged that in pursuance of said agreement, and while the same was in full force and effect, Lamb went to said territory and located certain mines and mining claims, and notified the plaintiffs and Smith thereof by letter, instructing them to come and assist him in accordance with said agreement, and that as soon thereafter as possible plaintiffs Prince, Peterson, Holloway, and defendant Smith went to Dawson, Canada, and found that Lamb had disposed of some of the mines acquired by him, and refused to allow them to assist him in working the mines and mining claims he then owned, and refused to account for or pay over to them any part of the minerals extracted. That the value of the said mining claims

owned by Lamb is four hundred thousand dollars or more, and that after the end of one year from the date of making said agreement Lamb extracted gold from said mines and claims to the amount of three hundred and fifty thousand dollars or more, and had sold certain mines and interests therein for large amounts of money; the names of such claims and the amounts received being unknown to plaintiffs. That Lamb has refused to convey to plaintiffs any part of said claims, and has refused to account to plaintiffs; and that plaintiffs and Smith have fully complied with and performed their part of the terms of said contract.

The prayer of the complaint is that Lamb be required to account for all moneys received by him for precious metals extracted as aforesaid from said mines and claims, and for the moneys received upon sales of mines and claims, and that he be required to pay over one-half so received, after deducting the amount received the first year, and the necessary expense for mining said minerals and locating and acquiring said claims. That said Lamb be required to convey to plaintiffs and to said Smith an undivided one-half interest in and to all mines and mining claims, or any interest therein, which he may now own in said Northwest Territory, Canada. That said Lamb pending suit be restrained from disposing of any of said property, and for general relief.

From the allegations of the complaint we may properly call this an action for an accounting and to compel the specific performance of a contract. Actions of this character are, and always have been, the subjects of equitable jurisdiction only. The complaint does not warrant relief in the way of damages for a breach of the contract, because no damages are either stated or claimed. (*Bohall v. Diller*, 41 Cal. 532; *Pittsburgh etc. Co. v. Greenwood*, 39 Cal. 71.) No relief usually granted in an action at law can be given on the complaint herein, for, without the equitable remedy of an accounting in the case, it would be impossible to determine that, after deducting the amount received the first year and the expense of mining and locating mines, there would be any portion of the three hundred and fifty thousand dollars, alleged to have been extracted, left to divide with the plaintiffs. Hence, the action being purely equitable in its

nature, to determine the sufficiency of the complaint we must measure it by those rules which prevail in courts of equity.

The appellants' chief contention is that the facts alleged disclose a special partnership agreement and that such agreement of partnership was executed and the partnership was actually launched when defendant started for the Northwest Territory. If this contention were true, it might not be sufficient to entitle the plaintiffs to the relief here sought; but is it in fact true? A partnership is defined to be, "the association of two or more persons for the purpose of carrying on business 'together, and dividing the profits." (Civ. Code, sec. 2395.) In the complaint nothing is said about the division of profits, or about any partnership, and the only allegation that can be said to refer to "carrying on business together" has relation, solely, to the future and is purely executory 'in its nature and does not tend to show that the "partnership was launched when defendant started for the Northwest Territory." Indeed, the complaint is singularly devoid of all those terms usually found in the definition of a partnership. (*Smith v. Schultz*, 89 Cal. 534.) Nor does the language of the complaint show that a division of the profits was contemplated by the parties. Profit is defined as "acquisition beyond expenditure," or, "excess of value received over cost." By the contract alleged plaintiffs were for their fifty dollars to be the owners of one-half of all the mines and mining claims acquired by defendant, with nothing said about deducting costs or expenditures in acquiring said mines. Of the minerals extracted after the first year plaintiffs are to have, according to the contract, one-half after deducting the necessary expense of mining the same. The expense to defendant of procuring these mines added to the expense of extracting 'the minerals may have been greater than the combined values of the mines and extracted minerals; if so, the plaintiffs alone would profit by the contract, and the defendant, instead of sharing in any profit, would be in arrears on the speculation. We think the contract, taken as a whole, is not one for division of profits, but rather for a moiety of property to be acquired by defendant, and therefore cannot properly be called a partnership contract under the code definition cited above. Another reason that might be given to show

that there was no partnership is found in the fact that it is not alleged that plaintiffs own any interest in any partnership property or business, or that they have ever been associated with defendant Lamb in carrying on any business. (*Coward v. Clanton,* 122 Cal. 451.) The mines are referred to as being owned by Lamb.

That portion of the contract relating to plaintiffs joining the defendant in working the mines and contributing to the labor and expense thereof evidently contemplated the forming of a partnership in the future, and had the parties carried it out it might have resulted in what is known as a mining partnership. "A mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom, actually engage in working the same." (Civ. Code, sec. 2511.) But even to constitute a mining partnership it would seem that the parties must be associated together in the ownership or possession of the property in some way. It appears that the defendant refused to carry out or execute this agreement for working the mines together, and, therefore, no mining partnership was actually perfected. Of an executory contract for a partnership similar to this it has been said: "In such cases it is well settled that when the partnership was never launched, and when one of the copartners has proceeded to conduct the enterprise in his own name, at his own cost, and for his own exclusive benefit, excluding the other party therefrom, and repudiating the partnership agreement, the only remedy of the party is an action at law for a breach of the contract. There would be in such a case no existing partnership, but only an agreement to form one which was never consummated by launching the enterprise." (*Powell v. Maguire,* 43 Cal. 11.) In the case last cited the court below had ordered an accounting between the parties and adjudged that the plaintiff be let into equal participation and enjoyment with defendant in the franchise and business of a ferry between Vallejo and Mare Island, and the supreme court reversed the judgment and ordered the court below to dismiss the action, one of the grounds being that the contract relied on was merely executory. That the relief here sought cannot be obtained on any theory of a partnership agreement see, also, Pomeroy's

Specific Performance of Contracts, section 290; *Ryer v. Richmond Traction Co.*, 168 U. S. 484, and cases there cited.

A special partnership is not disclosed by the complaint, as none of the steps requisite, under the code, to the formation of such a partnership are shown to have been taken. (Civ. Code, secs. 2477-85.)

In the case of *Harris v. Hillegass*, 54 Cal. 465, which appellants rely on to support their complaint, it was stated in the complaint that the parties were copartners, with equal interests, doing business in Philadelphia, and that the firm sent Hillegass, one of its members, to California and furnished him with fifteen hundred dollars to defray his traveling expenses, "and to enable him to engage in digging gold, and trading generally in said state on behalf of said firm," and that property which was procured by defendant, a share of which was sought by plaintiffs, was "acquired by and with the money aforesaid." In the case at bar, there are no such allegations as the above to be found in the complaint, nor is there anything therein equivalent to or approximating such allegations.

Neither can the complaint be upheld on the theory that it counts on a grub-stake contract. It is essential to a right in property under a grub-stake contract that such property should be acquired by means of the grub-stake furnished and pursuant to the grub-stake contract. The complaint does not show that the fifty dollars was used in procuring any portion of the property in controversy. (*Emery v. Mason*, 75 Cal. 222; *Miller v. Butterfield*, 79 Cal. 62; *Berry v. Woodburn*, 107 Cal. 512; *Cisna v. Mallory*, 84 Fed. Rep. 851.)

The only other question discussed in the briefs is, Does the complaint state a proper case for the enforcement of specific performance of the contract? "Specific performance cannot be enforced against a party to a contract in any of the following cases: 1. If he has not received an adequate consideration for the contract; 2. If it is not as to him just and reasonable." (Civ. Code, sec. 3391.) He who seeks the specific enforcement of a contract must show in his complaint that such contract is not obnoxious to the foregoing inhibition of the Civil Code. In *Agard v. Valencia*, 39 Cal. 292, it is said: "The court will not lend its aid to enforce a contract which is in any respect unfair

or savors of oppression, but in such cases will leave the party to his remedy at law. It is incumbent on the plaintiff, therefore, to state such facts as will enable the court to decide whether the contract is of such a character that it would not be inequitable to enforce it." (See, also, *Bruck v. Tucker*, 42 Cal. 346; *Arguello v. Bours*, 67 Cal. 447.) In this last case Mr. Justice McKinstry says: "In view of the intimation in *Bruck v. Tucker, supra*, it will always be safer to aver (as was done in this case) that the price paid was a just and fair price and the full value of the premises." In *Nicholson v. Tarpey*, 70 Cal. 608, it is said: "In actions for the specific performance of contracts for the sale of lands, it is necessary to allege and show to the court an adequate consideration for the performance of the contract sought to be enforced, and that the same is fair and reasonable in all its parts, and of such a character as may fairly call for the interposition of a court of equity." (*Morrill v. Everson*, 77 Cal. 114.) In *Windsor v. Miner*, 124 Cal. 492, it is said: "Specific performance is an equitable remedy, and it is incumbent upon the plaintiff, in an action of this character, to show both in the averments of his pleading and in the evidence at the trial that he is entitled to the equitable relief which he seeks."

These principles are not restricted to contracts for the conveyance of land, but they apply in all cases where the equitable jurisdiction of the court is invoked to enforce the specific performance of any obligation. (*Mississippi etc. R. R. Co. v. Cromwell*, 91 U. S. 643.) Measured by the foregoing rules we think the court below properly exercised the discretion which it has in cases of this character in sustaining the demurrer to the complaint. For all that appeared from the complaint, the property involved in the case may have cost the defendant Lamb more than the alleged value of it; in that event, it would be grossly inequitable to compel him to turn over the half of it for no greater consideration than fifty dollars.

From the facts which did appear on the face of the complaint we think the court was, also, warranted in saying that the complaint showed affirmatively that the contract was not just and fair, and that the consideration was inadequate, and that the de-

murrer was for that reason, also, properly sustained. To be sure, the expense of going to Alaska or the Northwest Territory does not appear from the complaint, but the court, we think, could take judicial cognizance that fifty dollars was not an adequate consideration in equity to entitle plaintiffs and defendant Clark to one-half the fruits of so toilsome and expensive a journey, to say nothing about the expense of procuring the property in question after his arrival in the mining country. We could not say that the court erred in drawing this conclusion from the allegations of the complaint, even though the question of adequacy and reasonableness should, as contended by appellant, be confined in point of time to the date of the contract.

From the facts which were stated it was reasonably certain that no facts were in existence upon which the relief demanded could properly be granted, and therefore it would have been worse than useless to permit an amendment of the complaint. Furthermore, as a matter of practice, the plaintiffs cannot have a reversal of the judgment on the ground that they were not granted leave to amend, for the reason that the record fails to show any request to amend, and there is no exception to the action of the trial court in that connection for this court to act upon. (*Buckley v. Howe,* 86 Cal. 605; *Durrell v. Dooner,* 119 Cal. 411.)

There are other reasons that might be given why we deem the complaint insufficient, but it seems unnecessary to state them.

We advise that the judgment be affirmed.

Britt, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.          Henshaw, J., Temple, J., McFarland, J.